UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TABITHA K. KAMMERAAD,

    Plaintiff,

v.                                                                                  Case No. 1:23-cv-234

COMMISSIONER OF SOCIAL                                  Hon. Paul L. Maloney
SECURITY,

    Defendant,
_____/

**REPORT AND RECOMMENDATION**

    Plaintiff brings this *pro se* action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her claim for disability insurance benefits (DIB).[1]

    Plaintiff filed an application for DIB on October 19, 2020, alleging a disability onset date of August 13, 2020. PageID.51.[2] Plaintiff identified her disabling condition as a back fusion. PageID.308. Plaintiff completed the 10th grade and has past relevant work as a fast food manager, production machine tender, fast food worker, telephone solicitor, motor vehicle assembler, and material handler. PageID.65-66. An ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on December 22, 2021. PageID.51-68. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] The Court notes that plaintiff was represented at the administrative level by Amale Knox and Elizabeth Gordon. *See* Page ID.77, 191-195.

[2] The Commissioner denied plaintiff's previous claims for DIB and SSI, finding that she was not disabled from August 12, 2016 through November 27, 2018. PageID.126-139.

1

### I. LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the [Commissioner] to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date of August 13, 2020, and met the insured status requirements of the Social Security Act through June 30, 2023. PageID.53. At the second step, the ALJ found that plaintiff had severe impairments of: degenerative disc disease of the lumbar spine status post fusion; obesity; major depressive disorder; generalized anxiety disorder; posttraumatic stress disorder (PTSD); and borderline personality disorder. PageID.54. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.54.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can lift and carry up to 10 pounds and stand and/or walk for two hours and sit for six hours in an eight-hour workday with the ability to alternate between sitting and standing throughout the workday. This sit/stand option is defined as the ability to stand for five minutes after sitting for 30 but remaining at the workstation. She will require a one-handed assistive device to ambulate to and from the workstation. She can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, occasionally balance as defined by the DOT, stoop, and crouch, but never kneel or crawl. The claimant cannot operate leg or foot controls bilaterally, can have no more than frequent handling, fingering, feeling, pushing, or pulling with the upper extremities. She can have no exposure to vibration or hazards including unprotected heights and dangerous moving machinery. The claimant cannot have exposure to temperature extremes. She cannot use public transportation and is limited to doing simple, routine work that involves making simple work-related decisions and tolerating occasional workplace changes. She can have occasional contact with the general public, coworkers, and supervisors.

PageID.57. The ALJ also found that plaintiff was unable to perform any past relevant work. PageID.65.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the sedentary exertional level. PageID.66-67. Specifically, the ALJ found that plaintiff could perform the requirements of occupations in the national economy such as addresser (80,000 jobs) and production inspector (20,000 jobs). PageID.66-67. Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, from August 13, 2020 (the alleged onset date) through December 22, 2021 (the date of the decision). PageID.67-68.

### III.    DISCUSSION

Plaintiff did not include a statement of errors. *See* Notice (ECF No. 7, PageID.781); Plaintiff's Brief (ECF No. 11). The gist of plaintiff's claim is that she qualifies for Social Security Disability because she met most of the requirements "under musculoskeletal disorder 1.00." Plaintiff's Brief at PageID.790.[3] While plaintiff is apparently referring to a group of listings which appear in § 1.00 "Musculoskeletal System," 20 C.F.R. Pt. 404, Subpt. P, App. 1, she does not identify any particular listed impairment.

A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir. 1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id*. An impairment satisfies the listing only when it

---

[3] Defendant's brief refers to a second error of "Whether the ALJ acted improperly in questioning Plaintiff about her receipt of government assistance." Defendant construed this claim from a phrase in plaintiff's brief that the ALJ "accused me of getting assistance from the state." *See* Defendant's Brief (ECF No. 12, PageID.804-805, 810-811); Plaintiff's Brief at PageID.790. This phrase arose from a common question posed at the administrative hearing, *i.e.*, "Are you receiving any kind of assistance? Cash assistance, food stamps, Medicaid?". PageID.82. This phrase does not raise an issue for review. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones.").

5

manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. § 404.1525(d). *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir.1987) (a claimant does not satisfy a particular listing unless all of the requirements of the listing are present).

"When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency." *Thacker v. Social Security Administration*, 93 Fed. Appx. 725, 728 (6th Cir 2004).

> For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.

*Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. § 404.1525(d).

Plaintiff's claim fails because she did not demonstrate that she met the requirements of a listed impairment, *i.e.*, plaintiff did not identify any particular listed impairment. In her response brief, plaintiff submitted an additional statement (ECF No. 13, PageID.813-814), as well as statements from third-parties Mario Zuniga (PageID.816), Sally J. VanWieren (PageID.817-818), and one of her children (PageID.819-821). While these statements express support for plaintiff, they do not establish that she meets the requirements of any particular listed impairment.

That being said, at the third step of the sequential evaluation, the ALJ found that plaintiff did not meet the requirements of two musculoskeletal listings, 1.15 and 1.16:

> I considered listing 1.15 (Disorders of the Skeletal Spine resulting in compromise of a nerve root) which requires (A) neuro-anatomic (radicular) distribution of one or more of the following symptoms consistently with compromise of the affected nerve root(s): (1) pain; or (2) paresthesia; or (3) muscle

6

fatigue; and (B) radicular distribution of neurological signs present during physical examination or on a diagnostic test and evidenced by 1, 2, and either 3, or 4: (1) muscle weakness; and ((2) sign(s) of nerve root irritation, tension, or compression, consistent with compromise of the affected nerve root; (3) sensory changes evidenced by: (a) decreased sensation; or sensory nerve deficit abnormal deficit (abnormal sensory nerve latency) on electrodiagnostic testing; or (4) decreased deep tendon reflexes; and (C) findings of imaging consistent with compromise of a nerve root(s) in the cervical or lumbosacral spine and (D) impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following: (1) a documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands; or (2) an inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements, and a documented medical need for a onehanded, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand; or (3) an inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements.

I also considered listing 1.16 (Lumbar spinal stenosis resulting in compromise of the cauda equina) requires (A) symptom(s) of neurological compromise manifested as: (1) nonradicular distribution of pain in one or both lower extremities; or (2) nonradicular distribution of sensory loss in one or both lower extremities; or (3) neurogenic claudication. AND (B) nonradicular neurological signs present during physical examination or on a diagnostic test and evidenced by 1 and either 2 or 3: (1) muscle weakness; (2) sensory changes evidenced by: (a) decreased sensation; or (b) sensory nerve deficit (abnormal sensory nerve latency) on electrodiagnostic testing; or (c) areflexia, trophic ulceration, or bladder or bowel incontinence; (3) decreased deep tendon reflexes in one or both lower extremities; AND (C) findings on imaging or in an operative report consistent with compromise of the cauda equina with lumbar spinal stenosis. AND (D) impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following: (1) a documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands; or (2) an inability to use one upper extremity to independently initiate, sustain, and complete work- related activities involving fine and gross movements, and a documented medical need for a onehanded, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand.

While the claimant has reported using a four wheeled walker, this is not prescribed but rather a cane is prescribed for ambulation and has been accommodated in the assessed residual functional capacity. She does not have a compromised nerve root which is required in order to meet listing 1.15 and does

not have measured weakness in the lower extremities or sensory changes. The claimant exhibits significant tenderness, but objective imaging and physical examinations do not support meeting listings 1.15 or 1.16.

PageID.55-56.

In this regard, the ALJ reviewed the medical evidence related to the alleged disabling condition in relevant part as follows:

> The claimant has a history of back pain with prior fusion discussed in the November 27, 2018 unfavorable decision (Exhibit B1A). Following her most recent 2018 surgery, the claimant reports being able to return to work and was pain free for about 18 months (Exhibit B3F/16). However, in August 2020, coinciding with the alleged onset date, the claimant reported left leg pain radiating down. She had stopped Cymbalta and all medications due to resolution of symptoms. The claimant reported she had been bending repeatedly at work for two months prior to the pain starting (Exhibit B3F/16). She was observed to have an antalgic gait. The claimant was referred to physical therapy and for imaging.
>
> An August 2020 MRI of the lumbar spine showed fusion and revision of decompression at L4-5 since the February 2018 MRI; improved appearance at this level; and at least moderate progressive spinal canal stenosis at L3-4, no high-grade neural foraminal narrowing, and transitional lumbosacral anatomy (Exhibit B1F/12-13). She received an epidural steroid injection in October 2020, but reported no relief (Exhibit B2F/3, 6). Physical therapy notes indicate the claimant has no weakness in her legs, but she expresses pain with almost every activity. She exhibited significant hip and pelvic tenderness bilaterally, suspecting weakness of the muscle and lack of flexibility (Exhibit B3F/8). Michigan Pain Consultants was recommended, which the claimant declined (Exhibit B3F/11). It was further assessed the claimant's pain is coming from lack of flexibility and strength. A November 2020 physical therapy visit notes the claimants condition was unresponsive to treatment (Exhibit B5F/1). She continued to have poor tolerance for therapy and expressing distress due to familial and work-related stressors. Her gait was observed as slow, she used a four-wheeled walker, and after nine sessions of manual therapy, gentle exercises, modalities including placebo effect, she was discharged without measurable progress. During her physical therapy, recommendation for the claimant to participate in psychiatry assessment and additional mental health treatment was made as the claimant was noted in a continuous state of distress, being hyperverbal with constant rumination (Exhibit B5F/28).
>
> The claimant has not participated in additional direct treatment, but continues to endorse 10/10 pain. She has not required additional surgical intervention, stopped physical therapy with no progress, and declined participation in the pain clinic. The claimant reports using medical marijuana to help with her

> symptoms. Overall, the claimant's physical condition is consistent with the prior unfavorable decision supporting sedentary work. She has a history of low back pain with a 2014 L4-5 decompression and after four opinions a revision [sic] in June 2018 despite many recommending non-surgical options. While she was able to return to work activity, she continues to have symptoms that now require the use of a cane, which is supported by the record. The claimant's physical symptoms have not greatly changed since the prior ALJ decision with the August 2020 MRI showing stable fusion. Much of the physical therapy notes indicate lack of flexibility and strength, with ongoing recommendations to strengthen her core. As she expresses increased pain following physical therapy sessions, she is discharged without progress. Despite the use of a walker, the claimant is observed at her mental health provider to have normal gait and station (Exhibit B13F/12). When the claimant presented to her medical provider in January 2021, she was using a walker, observed as obese, and she was very difficult to examine (Exhibit B10F/10). With every touch, the claimant screamed out (Exhibit B10F/10). Despite allegations of pain and the use of a walker, the record does not reflect follow up treatment with orthopedic specialists in 2021 or emergent treatment. . .

PageID.58-59.  The record provides substantial evidence to support the ALJ's decision that plaintiff did not meet the requirements of Listings 1.15 and 1.16.  Accordingly, plaintiff's claim should be denied.

## IV.    RECOMMENDATION

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.

Dated: November 1, 2023                              /s/ Ray Kent
                                                     RAY KENT
                                                     United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).